```
-------------------------------X---------------------------
KENNY SHENERY,                  :UNITED STATES DISTRICT COURT
                                :SOUTHERN DISTRICT OF NEW YORK
                                :
              Plaintiff,        :CASE No.:17-CV-5804 (LGS)(KHP)
                                :
       against                  : CIVIL ACTION
                                :
THE CITY OF NEW YORK, DETECTIVE : FIRST AMENDED COMPLAINT
DAVID TERRELL, and JOHN DOE,    :
                                : PLAINTIFF DEMANDS
                                : TRIAL BY JURY
                                :
                                :
              Defendant(s).     :
-------------------------------X---------------------------
```

TAKE NOTICE, the Plaintiff, KENNY SHENERY, hereby appears in this action by his attorneys, Nwokoro & Scola, Esquires, and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, KENNY SHENERY by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The City of New York, Detective David Terrell, and John Doe, collectively referred to as the Defendants, upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983.

1

## JURISDICTION

2. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

4. Plaintiff, Kenny Shenery resides in the Bronx, within the City and State of New York.

5. The actions which form the underlying basis for this case all took place in the County of Bronx, within the jurisdiction of the Southern District of New York.

6. Defendants Detective David Terrell and John Doe, are police officers for the City of New York acting under color of state law. At all material times, the defendant Police Officers were employed at the 42nd precinct of the New York City Police Department, (NYPD) which covers the area known as the Morrisanna Section of the Boro of the Bronx. They are being sued in both their individual and official capacities.

7. John Doe is a police officer or detective attached to the 42nd Precinct of the NYPD whose name is currently unknown to the plaintiff.

8. The Defendant, City of New York is a municipality in the State of New York and employs the Defendant Police Officers.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. On or about May 18, 2015, plaintiff was playing with dice with some friends in front of 1159 Fox Street, Bronx, New York, when a police vehicle pulled up and defendant, Det. David Terrell, and his partner, John Doe exited the police vehicle and accosted the plaintiff and his friends. The defendants subjected the plaintiff and his friends to a brief search or frisk.

10. After frisking them, Detective Terrell and Officer Doe released plaintiff's friends but did not release the plaintiff, instead, defendants physically restrained the plaintiff, twisted his hands behind his back, handcuffed him and placed him in the back of their police vehicle.

11. With plaintiff handcuffed, Det. Terrell decided to wager plaintiff's freedom on a game of dice with plaintiff's friends. Det. Terrell stated that if Det. Terrell won the game, he would arrest another of plaintiff's friend and lock them up together, but if Det. Terrell lost the game, he would release the plaintiff.

12. Det. Terrell then played and lost the game of dice, and thereby lost his wager, however, he reneged on his promise to release the plaintiff, rather, he got back into the police vehicle, drove away with the plaintiff still handcuffed, and interrogated the plaintiff while the vehicle was in motion. (A video recording of this incident is in the possession of the plaintiff and the same is hereby specifically referenced and incorporated into this complaint.

13. Det. Terrell interrogated the plaintiff about Pedro Hernandez, stating, "who is Pedro Hernandez". Plaintiff explained to Det. Terrell that he did not know Pedro Hernandez.
14. During this bizarre interrogation, Det. Terrell also asked the plaintiff to tell him who was running guns in the neighborhood. Plaintiff also explained to Det. Terrell that he didn't know who was running guns.
15. Det. Terrell threatened plaintiff with jail time unless plaintiff told him what he wanted to know.
16. Det. Terrell then took the plaintiff to the 42nd Precinct, where he was locked up in a holding cell.
17. Plaintiff was in the custody of the defendants for 48 hours and during this period, he was not given food or water and he was dehydrated and starving when he was released.
18. Although plaintiff was arrested, handcuffed, and detained for 48 hours, as if he was being charged with a crime. Plaintiff was not in fact charged with a crime, but was issued a Summons for unreasonable noise. In fact, plaintiff was not playing music nor making any noise and the real purpose of plaintiff's arrest was for Det. Terrell to interrogate him.
19. That issuing a summons or violation for playing loud music does not ordinarily require an arrest and detention and there was no reasonable basis to arrest the plaintiff and detain him for two days.
20. Following this arrest, plaintiff was in custody for two days and was not released until May 20, 2015.
21. The arrest of plaintiff on or about May 18, 2015, was without probable cause.
22. That the said arrest was motivated by malice and a desire on the part of Detective David Terrell and John Doe to

4

improperly coarse the plaintiff into giving false testimony against Pedro Hernandez and or testimony about gun running.

23. That at no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

24. That in the course of the aforesaid arrest, plaintiff was detained, manhandled, restrained and handcuffed by defendants Terrell and Doe and thereafter was transported in a police vehicle to the offices of the 42nd precinct of the NYPD, where he was pedigreed, booked and further detained.

25. That Detective Terrell and the John Doe falsely issued plaintiff with a criminal summons for unreasonable noise in order to justify their improper arrest of the plaintiff.

**AS A FIRST CAUSE OF ACTION FOR THE ARREST AGAINST DETECTIVE DAVID TERRELL AND JOHN DOE, FALSE ARREST/IMPRISONMENT: UNLAWFUL SEARCH AND SEIZURE: DEPRIVATION OF RIGHTS IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C § 1983**

26. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

27. In the arrest, detention and imprisonment of plaintiff on or about May 18, 2015, defendants, acting under color of state law, deprived the plaintiff of his right to be free from unreasonable search and seizure and arrest without probable cause or reasonable suspicion as required by the Fourth and Fourteenth Amendments, therefore defendants are liable for violation of 42 U.S.C. Section 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

28. As a result of aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and have been otherwise damaged in his character and reputation.
29. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.
30. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## AS A THIRD CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

31. By this reference, plaintiffs incorporates each and every allegation and averment set forth in all preceding paragraphs of this complaint as though fully set forth herein.
32. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.
33. The City of New York directly caused the constitutional violations suffered by the plaintiff as a result of the conduct of defendant David Terrell because the City of New York, knew, or should have known of defendant Terrell's propensity to engage in misconduct of the types alleged herein including false arrest, use of physical threats and threat of improper criminal prosecution to suborn false

6

testimony, and filing of false official statements.

34. Between May 2003 and May 18, 2015, citizens made complaints to the City of New York, charging Terrell with misconduct similar to those alleged here, 78 times with respect to approximately 30 cases, thereby putting the City on notice with respect to Terrell's propensity to violate the constitutional rights of citizens, and Terrell was neither dismissed from the force nor punished in any proportionate manner but rather he was rewarded by being promoted from police officer to Detective.

35. On February 9, 2005, Defendant Terrell, at the time, a police officer assigned to the 42nd Precinct of the NYPD, falsely arrested Peter Thomas. During the course of this arrest, Terrell handcuffed and beat Mr. Thomas causing injuries to his head, neck and back. Terrell and other police officers then attempted to physically coerce Mr. Thomas into signing a false confession. When he refused, Terrell beat him again and took him into custody. Terrell then charged and maliciously prosecuted Mr. Thomas with bogus crimes. After ten months of pre-trial detention, all the charges against Mr. Thomas were dismissed. Peter Thomas complained to the NYPD and the Civilian Complaints Control Board regarding Terrell's conduct and also sued Terrell and the City of New York for civil rights violations similar to the ones in this case.

36. On June 8, 2005, a complaint was made to the City of New York, alleging false arrest and excessive use of force by defendant Terrell during an arrest that occurred on June 3, 2005, while Terrell was a police officer assigned to the 77th Precinct of the NYPD.

37. On June 28, 2005, a complaint was made to the City of New York, alleging false arrest and excessive use of force by

7

defendant Terrell during an arrest that occurred on June 18, 2005, while Terrell was a police officer assigned to the 77th Precinct of the NYPD.

38. On January 13, 2006, a complaint was made to the City of New York alleging false arrest and excessive use of force by defendant Terrell during an arrest that occurred on January 11, 2006 while Terrell was assigned to the 77th Precinct of the NYPD.

39. On June 13, 2006, defendant Terrell falsely arrested and physically brutalized Taisha Carter at a restaurant in Brooklyn. Ms. Carter was asked by police officers to produce her identification, as she attempted to comply, defendant Terrell suddenly grabbed her violently, handcuffed her and then falsely arrested her and charged her with bogus crimes. She was then kept in custody for a day and taken to Central Booking. All criminal charges against Ms. Carter from this incident were later dismissed. Ms. Carter complained to the NYPD and the City of New York about Terrell's conduct and also brought a lawsuit against Terrell and the City of New York alleging civil rights violations similar to the ones in this case.

40. On August 4, 2006, a complaint was made to the City of New York alleging excessive use of force and threat of force by defendant Terrell during an arrest that occurred on August 1, 2006, while Terrell was assigned to the 77th Precinct of the NYPD.

41. On September 22, 2006, a complaint was made to the City of New York alleging excessive use of force, threat of force and false arrest by defendant Terrell during an arrest that occurred on September 19, 2006, while Terrell was assigned to the 42nd Precinct of the NYPD.

42. On February 28, 2007, a complaint was made to the City of

New York alleging excessive use of force and false arrest by defendant Terrell during an arrest that occurred on August 17, 2006 while Terrell was assigned to the 77th Precinct of the NYPD.

43. On April 23, 2007, a complaint was made to the City of New York alleging excessive use of force and false arrest by defendant Terrell during an arrest that occurred on April 3, 2007, while Terrell was assigned to the 42nd Precinct of the NYPD.

44. On January 2, 2008, a complaint was made to the City of New York that defendant Terrell, verbally abused, threatened use of force, then choked, pepper sprayed, and otherwise used excessive force against a citizen during an arrest that occurred on December 27, 2007, while Terrell was assigned to the 42nd Precinct of the NYPD.

45. On January 21, 2009, a complaint was made to the City of New York alleging excessive use of force and false arrest by defendant Terrell during an arrest that occurred on January 21, 2009 while Terrell was assigned to the 42nd Precinct of the NYPD.

46. On February 3rd, 2009, defendant David Terrell, while acting as a police officer assigned to the 42nd Precinct of the NYPD, at the Bridges Juvenile Center, a Facility for juveniles in the custody of the New York City Department of Juvenile Justice, brutally assaulted SS, then a fifteen year old girl in the custody of the Department of Juvenile Justice. Terrell first knocked a plate of food out of the hands of the teenage girl, then in the presence of others, including other teenage girls in custody, Terrell punched SS multiple times in her face. The punches caused the juvenile's head to hit the bench where she was seated causing injuries to her face and head. As a result of this

incident, a SS's guardian made a complaint to the NYPD and the City of New York about Terrell's conduct and also sued Terrell and the City of New York for civil rights violations.

47. On September 21, 2009, a complaint was made to the City of New York alleging excessive use of force and false arrest by defendant Terrell during an arrest that occurred on September 21, 2009 while Terrell was assigned to the 42nd Precinct of the NYPD.

48. On September 23, 2010, a complaint was made to the City of New York alleging that defendant Terrell made threats of arrest and threats of force and was verbally abusive against a citizen during an incident that occurred on September 23, 2010 while Terrell was assigned to the 42nd Precinct of the NYPD.

49. On March 15, 2011, defendant Terrell brutalized Charmaine Dixon and her infant son, then falsely arrested Ms. Dixon and charged her with bogus crimes. On that day, Charmaine Dixon was called to the 42nd Precinct because her infant son had been arrested at his school and taken to the 42nd Precinct. Accompanied by her infant daughter, Ms. Dixon went to the 42nd Precinct. As she was approaching the Precinct, Ms. Dixon heard her infant son yelling out in pain from within the "bullpen" of the precinct. Ms. Dixon peered through the window into the bullpen and saw several police officers including Terrell, punching her son and using chemical agents against him while he was handcuffed. A horrified Ms. Dixon screamed then attempted to walk away from the precinct, at this point, five police officers all assigned to the 42nd Precinct of the NYPD, including Terrell, exited the precinct with the intent of preventing Ms. Dixon from reporting the brutality that she had just

witnessed. As Ms. Dixon walked away, Terrell pursued and caught up with her. Without warning, he grabbed Ms. Dixon by her right arm, bear hugged her around the waist, picked her up in the air and slammed her down to the sidewalk. Defendant Terrell then handcuffed, falsely arrested and charged Ms. Dixon with bogus crimes of resisting arrest and obstructing governmental administration. The charges were dismissed two days later. Ms. Dixon complained to the NYPD and the City of New York regarding Terrell's conduct and sued the City of New York and David Terrell for civil rights violations similar to the ones in this case.

50. On March 17, 2011, a complaint was made to the City of New York alleging that defendant Terrell falsely arrested, then choked, pepper sprayed and otherwise used excessive force against a citizen during an arrest that occurred on March 17, 2011 while Terrell was assigned to the 42nd Precinct of the NYPD.

51. On January 26, 2012, Defendant Terrell and other police officers were videotaped as they falsely arrested then brutalized Teenager Jateik Reed by beating him with batons, punching him, kicking him and spraying him with pepper spray although Mr. Reed had broken no laws and was not even resisting arrest. In the official reports of the incident, Terrell and other police officers involved all falsely stated that at the time of the arrest, Jateik Reid was found in possession of crack cocaine and marijuana. However, the video, which was filmed by a friend of Jateik Reid, proved that Reid had neither cocaine nor marijuana when he was arrested. When Jateik Reid's mother, Schuan Reid, went to the 42nd Precinct to check on her Jateik Reid, accompanied by another infant son who was 16 years old at the time, the police, including Terrell, arrested her, then

arrested her 16 years old son and took custody of her four year old son as well. In the process of this arrest, Terrell punched the 16 years old son, and while he was on the ground, stepped on his head. This incident was witnessed by multiple bystanders. As a result of this incident, the Reids were all charged with bogus crimes which where then subsequently dismissed in court. Schuan Reid and her sons complained to the NYPD and the CCRB regarding the conduct of defendant Terrell and also turned over video evidence of the brutality and falsification of evidence on the part of Terrell to the NYPD and the CCRB. The Reids also brought a lawsuit for civil rights violations against the City of New York and David Terrell. (A video recording of this incident exists and is hereby specifically referenced and incorporated into this complaint).

52. On March 6, 2012, a complaint was made to the City of New York alleging that defendant Terrell threatened to arrest, then used excessive force against a citizen during an incident that occurred on February 28, 2012 while Terrell was assigned to the 42nd Precinct of the NYPD.

53. On March 18, 2015, a complaint was made to the City of New York alleging that on March 14, 2015, defendant Terrell threatened use of force against, verbally abused, body slammed, choked and otherwise used excessive physical force against a citizen while Terrell was assigned to the 42nd Precinct of the NYPD.

54. Upon information and belief, prior to September 4, 2015, the City of New York, was aware of numerous claims of constitutional violations involving David Terrell and federal civil right lawsuits filed against Terrell and the City of New York. Despite its knowledge of such claims and

incidents of violation by Terrell, the City failed to take remedial action.

55. As a result of the City's inaction regarding Detective Terrell, Kenny Shenery's rights were violated.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;
4. For such other and further relief as the court deems proper.

Dated: March 17, 2018,
New York, New York

_____
Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060